UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
JOHN DOE,

                        Plaintiff,


                    -against-


ABC COMPANY LLP, JOHN DOE II,
JOHN DOE III, JOHN DOE IV, JOHN DOE V,
and JOHN DOE VI,
                        Defendants.
-------------------------------------------------------------------x

14 Civ. 6867 (VEC)

**ORAL ARGUMENT
REQUESTED**


## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF ALLOWING ACTION TO REMAIN UNDER SEAL

**J**OSEPH **H**AGE **A**ARONSON **LLC**
Gregory P. Joseph (GJ-1210)
Pamela Jarvis (PJ-1250)
Courtney A. Solomon (CS-1289)
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel:  (212) 407-1200
Fax: (212) 407-1280
Email:  gjoseph@jha.com

*Attorneys for Defendants*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT ...........................................................................................................................6

I.     The Complaint Improperly Uses and Reveals Confidential Client Information ...........6

II.     Protection of Confidential Client Information
Is a "Higher Value" Under *Lugosch* ..........................................................................12

III.     New York Law Supports Sealing to Protect Confidential Information ......................14

IV.     The Marked Complaint Is Not a Proposed Redacted Complaint ................................24

CONCLUSION .......................................................................................................................25

# TABLE OF AUTHORITIES

Page

## Cases

*Doe v. A Corp.*, 330 F. Supp. 1352 (S.D.N.Y. 1971),
    *aff'd sub nom.*, *Hall v. A Corp.*, 453 F.2d 1375 (2d Cir. 1972) ................................... 17-19

*E.E.O.C. v. Kelley Drye & Warren LLP*,
    No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545 (S.D.N.Y. Mar. 2, 2012)............. 12-13

*Eckhaus v. Alfa-Laval, Inc.*,
    764 F. Supp. 34 (S.D.N.Y 1991)........................................................................................22

*Gray v. Maryland*,
    523 U.S. 185 (1998)...........................................................................................................25

*In re Fairfield Sentry Ltd.*,
    714 F.3d 127 (2d Cir. 2013)...............................................................................................12

*In re Savitt/Adler Litig.*,
    No. 95-CV-1842, 1997 WL 797511 (N.D.N.Y. Dec. 23, 1997)........................................14

*Johnson v. Medisys Health Network*, No. 10-CV-1596 (ERK)(VVP),
    2011 U.S. Dist. LEXIS 156828 (E.D.N.Y. Apr. 28, 2011), *adopted by*,
    2011 U.S. Dist. LEXIS 156827 (E.D.N.Y. June 10, 2011) ...................9, 15-17 & nn.9-11

*Lugosch v. Pyramid Co. of Onondaga*,
    435 F.3d 110 (2d Cir. 2006)..................................................................................... *passim*

*Lugosch v. Congel*,
    No. 1:00-CV-0784, 2006 WL 931687 (N.D.N.Y. Mar. 7, 2006),
    *R&R rejected in part on other grounds*,
    2006 WL 6651777 (N.D.N.Y. May 5, 2006)....................................................................13

*NCK Org. Ltd. v. Bregman*,
    542 F.2d 128 (2d Cir. 1976)...............................................................................................10

*Std. Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth.*,
    347 F. App'x 615 (2d Cir. 2009) .......................................................................................11

*United States v. Amodeo*,
    71 F.3d 1044 (2d Cir. 1995).................................................................................14, 16 n.9

*United States v. Llanez-Garcia*,
    735 F.3d 483 (6th Cir. 2013) ...............................................................................................1

*United States v. Quest Diagnostics Inc.*,
    734 F.3d 154 (2d Cir. 2013).................................................................. 20-21, 22

*United States v. Smith*,
    985 F. Supp. 2d 506 (S.D.N.Y. 2013).............................................................14

*Wise v. Consol. Edison Co.*,
    282 A.D. 2d 335 (1st Dep't 2001),
    *lv. to app. den.*, 96 N.Y. 2d 717 (2001) ..................................................... 19-20

## Rules & Statutes

N.Y. RULES OF PROF'L CONDUCT R. 1.6 .............................................................. *passim*

N.Y. RULES OF PROF'L CONDUCT R. 1.6 cmt. 2 .......................................................13

N.Y. RULES OF PROF'L CONDUCT R. 1.6 cmt. 3 .............................................. 8 & n.6

N.Y. RULES OF PROF'L CONDUCT R. 1.6 cmt. 4 .......................................................10

N.Y. RULES OF PROF'L CONDUCT R. 1.6 cmt. 4A .......................................................9

N.Y. RULES OF PROF'L CONDUCT R. 1.9(c) .............................................. *passim*

N.Y. RULES OF PROF'L CONDUCT R. 3.3(a) ...........................................................5, 7

N.Y. RULES OF PROF'L CONDUCT R. 8.3(a) ...............................................................7

## Other Authorities

Federal Judicial Center, *Sealed Cases in Federal Courts* (October 23, 2009).................12, 12 n.7

N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 1026, 2014 WL 5369077 (2014).................11

N.Y. State Ins. Fund, Request for Proposals for Ins. Defense Outside Counsel (Aug. 4, 2014),
    *available at*
    http://ww3.nysif.com/AboutNYSIF/~/media/Files/Procurement/PDF/2014-15-
    LEG_Outside%20Counsel%20-%20Insurance%20Defense_RFP.ashx .....................14 n.8

N.Y. State Urban. Dev. Corp.,
    Solicitation for Pre-Qualification of Legal Counsel (Apr. 11, 2014), *available at*
    http://esd.ny.gov/CorporateInformation/Data/RFPs/04182014_RFP_2014_Equity_Invstm
    nt_Counsel.pdf ............................................................................................14 n.8

Pursuant to the Court's Order of September 22, 2014, Defendants ("**BLB&G**" or the "**Firm**") respectfully submit this brief and the opinion of legal ethics expert Bruce A. Green ("**Green Dec**.") in support of continued sealing of this action (the "**Action**").[1] Separately, pursuant to the Court's directive at the September 22, 2014 hearing (Tr. 29:1-7), BLB&G is also submitting a supplement brief ("**Defs.' Supp. Br**.") explaining why Bernstein's complaint (the "**Complaint**") concerns a private dispute, not a matter of public interest.

## PRELIMINARY STATEMENT

Unsealing this Action would not promote the public interest, but it would severely harm the private interests of the parties and their clients. As demonstrated in Defendants' Supplemental Brief, this is a quintessentially private dispute. Unsealing would neither enlighten the public nor lead to redress of any public concern. But it would unwind a settlement, revive a dismissed litigation, and force the parties and the Court into a protracted, and costly, litigation that all parties want to put behind them. It would needlessly expose confidential information of two of Bernstein's former clients — Mississippi Public Employees' Retirement System ("**MPERS**") and Richard Reynolds — information that they have expressly directed Bernstein to keep confidential (Green Dec. ¶¶28-29, 36). This loss of confidentiality would be irreparable.

Unsealing would tarnish the reputations of these clients and expose them to attack in other litigations, in the press, and elsewhere. BLB&G, the leading firm in its field, with an unblemished reputation, would be tainted in the eyes of courts and prospective clients. *Cf. United States v. Llanez-Garcia*, 735 F.3d 483, 485 (6th Cir. 2013) ("An attorney's reputation is her most valuable possession"). If the settlement unwinds and BLB&G is forced to litigate, vindication of both the clients and the Firm in the courts will take months or years, during which

---
[1]   Emphasis is added to, and internal brackets, quotation marks and footnotes are omitted from, quoted material throughout this brief, unless otherwise indicated. Exhibit references are to the accompanying Declaration of Courtney A. Solomon (the "**Solomon Ex**.") Citations to the September 22, 2014 transcript appear as "**Tr**."

they will be under a cloud regardless of the merits of Bernstein's allegations.

Professor Green, one of country's most respected legal ethicists, has meticulously analyzed this matter and concluded that Bernstein "breached his ethical and fiduciary duties by filing a complaint which uses [confidential client] information to seek monetary damages for his personal benefit." Green Dec. ¶2; *id*. ¶¶32-33, 40.[2] Professor Green further concludes that "allowing this information to become public would exacerbate Mr. Bernstein's breach of his confidentiality duty and cause exactly the kind harm that New York's ethical rules are intended to prevent." *Id*. ¶2, *see also* ¶24 ("If a complaint or other document that improperly uses or discloses confidential client information is allowed to become public, such trust [between lawyer and client] will inevitably be eroded.").[3]

The Complaint asserts that BLB&G acted unethically by filing a class action fee petition (the "**Fee Petition**") in *In re Satyam* that misrepresented who was to share in the fee award, and that this was part of a "Kickback Scheme" that extended to the Firm's representation of MPERS and Reynolds in the *In re Merck* class action. None of this is true. The Court expressed concern that if it were true, Bernstein was in a difficult position (Tr. 25-26), but as Defendants' Supplemental Brief demonstrates, there is no need for that concern:

- **There was no false statement in the Fee Petition**. The Complaint does not cite or quote

---

[2]  Bernstein is also contractually barred from disclosing his former clients' confidential information, which further militates in favor of closing the case and preserving confidentiality. He signed an undertaking to comply with all terms of the BLB&G Employee Handbook (Solomon Ex. E), which includes the following:

> [E]mployees are required to keep confidential, and not disclose, information about the Firm and/or the Firm's current and prospective clients to anyone who does not work for the Firm and to anyone within the Firm who does not have an absolute need to know the confidential information. … [Y]ou agree that your obligation to preserve the confidentiality of internal Firm information and documents … is a permanent commitment that will continue after your separation from employment, regardless of the reason for the separation….

[3]  Ironically, in his letter resigning from BLB&G, Bernstein states that he asked the Firm to consult Professor Green about his putative ethical concerns. Cmpl. ¶95. Long before Bernstein filed the Complaint, BLB&G gave him an opinion from Professor Green concluding that Bernstein's proposed damages suit against BLB&G based on information learned in representing MPERS and Reynolds would violate his confidentiality duty to those clients.

*any* statement in the Fee Petition, let alone a statement that fees would be shared only with the firms mentioned by name in the Fee Petition. The filings and orders in *Satyam* show conclusively that the Court understood and intended that the fees awarded to Lead Counsel would be allocated by Lead Counsel, in their discretion, among *all plaintiffs' counsel*, without further notice to the Court. Defs.' Supp. Br. §II.

- **The Fee Petition was not required to disclose anything about Vaterria Martin**. The Complaint does not identify any legal requirement that the Fee Petition include information about Martin, and no such requirement existed on August 1, 2011, when the petition was filed, because the Local Rule requiring disclosure of fee sharing arrangements in class actions had been repealed. *Id*. §III.

- **The Complaint pleads no ethical violation by BLB&G, and no deterrence or retaliation**. The Complaint cites no ethical rule that BLB&G broke, and since there was no false statement in the Fee Petition, no rule was broken. Nor does the Complaint plausibly allege that BLB&G tried to deter Bernstein from, or retaliate against him for, reporting unethical conduct outside the Firm. Bernstein does not claim that he ever expressed an intention to report, so there was nothing for the Firm to deter. And he was not deterred: he claims that he reported the "Kickback Scheme" to the U.S. Attorney's Office in December 2011, after which BLB&G allegedly did two things: plan to fire him (there was no such plan) and persuade Reynolds to continue as a client of the Firm. In other words, he hypothesizes that BLB&G (1) waited for 10 months (December 2011 to October 2012), during which time he was silent about his *Satyam* concerns, before suddenly retaliating by planning to fire him, and (2) wanted to keep Reynolds as a client in order to retaliate against Bernstein, not because it was in the Firm's economic interest.

Neither hypothesis makes sense. Nor is Bernstein able to explain why, if the Fee Petition was false, he never did anything to correct it. *Id.* §IV.

- **There is nothing improper in Mississippi lawyers working on *Merck*.** As a matter of policy, Mississippi and its agencies engage local and minority lawyers to work on their litigation. They also encourage outside counsel to give such lawyers the opportunity to gain experience, at no cost to the State, that would enable them to play a larger role in future such litigation. BLB&G did nothing improper in honoring this policy. The Complaint does not allege any deficiency in these lawyers' work on *Merck*; or that BLB&G made any false or misleading statement about them; or that Bernstein, while at BLB&G, expressed any ethical concern about them; or that he intended to report any such concern outside BLB&G; or that the Firm deterred him from reporting it; or that he did report it; or that BLB&G retaliated against him for reporting it. *Id.* §V.

Consequently, this is at most a private dispute about whether Bernstein is entitled to a bonus from BLB&G equal to 10% of any fees generated from the Firm's representation of Reynolds in *Merck* (there have been no fees yet). Bernstein invokes the "Kickback Scheme" to try to link his *Satyam*-related allegations to his claim for a bonus in *Merck*. But there is no link. Bernstein alleges that he "expected" BLB&G to pay him a 10% bonus based on fees attributable to clients he brought in.[4] Whether that expectation is legally enforceable has nothing to do with the Fee Petition, Vaterria Martin's work on *Satyam*, other Mississippi lawyers' work on *Merck*, or whether BLB&G tortiously interfered with Bernstein's professional relationship with Reynolds. These allegations are in the Complaint solely for their extortion value. Unsealing

---

[4]     The Complaint conspicuously refrains from alleging that BLB&G contracted to pay Bernstein a 10% bonus based on *Merck* or any other case. Instead, it alleges (¶27) that he "joined BLB&G with the *understanding*, consistent with *industry customs and practices*, that BLB&G would pay Bernstein … at least 10 percent of the fees generated from the clients he brought in." *See also* Cmpl. ¶¶182-83 (Bernstein "expected" 10% bonus) ¶190 (same).

them now would carry out Bernstein's threat when the threat is moot because the case is over.

Moreover, if Bernstein genuinely believed that the Fee Petition — which he drafted and put his name to more than three years ago — contained a false statement, he was *required* by Rule 3.3(a) of the New York Rules of Professional Conduct (the "**N.Y. Rules**" or "**Rules**") to make a corrective statement to the *Satyam* Court. Green Dec. ¶¶45-46; Defs.' Supp. Br. §IV. He never did. He represented to this Court that he takes his "fiduciary duties … and ethical obligations very seriously" (Tr. 24). If that is true, then his failure to submit any correction to the *Satyam* Court is a telling admission that he knows the Firm committed no ethical violation and that he is acting in pure self-interest.

Confidential client information has been recognized by this Court as a "higher value" that warrants the sealing of judicial documents under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). *See* Point II, *infra*. State and federal courts in New York have consistently accorded such information the strongest possible protection, not only sealing it from public view but also dismissing suits brought by lawyers against former clients that implicate such information. *See* Point III, *infra*. Unsealing the now-dismissed Complaint would have the same deleterious effect on MPERS and Reynolds that the courts in these cases took action to stop.

New York lawyers are strictly forbidden from using and disclosing confidential client information in pursuit of claims for their own personal gain. It surely follows that this Court should not now, in a case that is over, let Bernstein's misuse of his former clients' confidential information precipitate an unsealing that would do what he is ethically forbidden from doing — disclose MPERS' and Reynolds' confidential information against their express instructions. In these circumstances, *Lugosch* allows the Court to close the case and leave its sealed status intact.

**ARGUMENT**

**I.**     **The Complaint Improperly Uses and Reveals Confidential Client Information**

N.Y. Rule 1.6(a) bars the knowing *disclosure* of confidential client information for any purpose, and it bars the *use* of such information to the disadvantage of the client or for the advantage of the lawyer, with two irrelevant exceptions (client consent or the Rules elsewhere authorize disclosure).  *See* Green Dec. ¶¶12-13.  Under N.Y. Rule 1.9(c), the duty to preserve confidential client information, and not to use it adversely to the client, continues after the lawyer-client relationship ends.  Green Dec. ¶¶12, 20.

The definition of confidential client information in Rule 1.6(a) is broad.  It includes not only privileged information but also all other information gained during, or relating to, the representation of the client, if either (1) the client has requested it be kept confidential, as both clients have here, or (2) it is likely to be embarrassing or detrimental to the client, as is also the case here.[5]  Green Dec. ¶14.  The duty of confidentiality extends to information that becomes known by others, as long as it does not become generally known.  Information is *not* generally known simply because it is in the public domain or available in a public file.  *Id*. ¶¶16-18.

There are exceptional circumstances in which a lawyer may use or disclose confidential client information, but even then the use and disclosure must be minimized.  *Id*. ¶¶21-23, 33. The exceptions are set forth in N.Y. Rule 1.6(b), and bringing suit for the lawyer's personal gain is conspicuously not among them:

A lawyer may reveal or use confidential information to the extent that the lawyer

---

[5]     Rule 1.6(a)(3) disjunctively defines confidential information as follows:

"Confidential information" consists of information gained during or relating to the representation of a client, whatever its source, that is (a) protected by the attorney-client privilege, **(b) likely to be embarrassing or detrimental to the client if disclosed, or (c) information that the client has requested be kept confidential**.  "Confidential information" does not ordinarily include (i) a lawyer's legal knowledge or legal research or (ii) information that is generally known in the local community or in the trade, field or profession to which the information relates.

reasonably believes necessary:

> (1) to prevent reasonably certain death or substantial bodily harm;

> (2) to prevent the client from committing a crime;

> (3) to withdraw a written or oral opinion or representation previously given by the lawyer and reasonably believed by the lawyer still to be relied upon by a third person, where the lawyer has discovered that the opinion or representation was based on materially inaccurate information or is being used to further a crime or fraud;

> (4) to secure legal advice about compliance with these Rules or other law by the lawyer, another lawyer associated with the lawyer's firm or the law firm;

> (5) (i) to defend the lawyer or the lawyer's employees and associates against an accusation of wrongful conduct; or (ii) to establish or collect a fee; or

> (6) when permitted or required under these Rules or to comply with other law or court order.

None of these exceptions applies here. Exceptions (1)-(4) have no possible relevance.

Exception (5)(i) (sometimes referred to as the self-defense exception) is inapplicable because

Bernstein has used the information offensively, to sue for personal gain, not to defend against a

charge of wrongdoing. Green Dec. ¶¶32-33, 38. Exception (5)(ii) is irrelevant because

Bernstein is not suing MPERS or Reynolds for a fee. *Id.* ¶¶33, 38. It should be stressed that

Rule 1.6(b)(5) is intentionally narrower than its counterpart in the ABA Model rules:

> <u>Rule 1.6(b)(5) does not allow a lawyer to use client confidences to establish a claim against a third party</u>. Indeed, the rule does not even permit a lawyer to disclose confidences to establish a claim against a *client* other than to establish or collect a legal fee. <u>In this respect, New York's rule is narrower than the counterpart provision of the ABA Model Rules of Professional Conduct</u>, which permits a lawyer to disclose client confidences "to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client." <u>When the N.Y. Rules were drafted and adopted, the drafting committee expressly considered and rejected the ABA's broader exception</u>.

Green Dec. ¶33. Exception (6) is inapplicable because Bernstein's suit is not a report within

N.Y. Rule 8.3(a) or a correction of a previous false statement under Rule 3.3(a). *Id.* ¶¶38, 42-46;

*see also id.* ¶¶40-41.

Bernstein possesses attorney-client privileged information from his representation of MPERS and Reynolds. The Complaint does not disclose any privileged information, but this does not diminish the need for sealing, because information protected by the ethical rules and fiduciary duty law is not limited to privileged information. *See* disjunctive three-part definition of confidential information in Rule 1.6(a); N.Y. Rule 1.6 cmt. 3.[6] *See also* cases discussed at pp. 15-20, *infra*; Green Dec. ¶¶14-16.

Both MPERS and Reynolds have expressly requested that the confidentiality of their information be preserved. That, by itself, satisfies subpart (c) of the definition of confidential information in Rule 1.6(a). Green Dec. ¶¶14, 28-29, 36; Solomon Ex. F (May 20, 2013 letter from George Neville on behalf of MPERS), Ex. G (May 29, 2013 letter from George Neville on behalf of MPERS), Ex. H (December 17, 2013 Declaration of Richard Reynolds).

The Complaint is also replete with confidential client information that will be embarrassing and detrimental to MPERS and Reynolds, within subpart (c) of the definition in Rule 1.6(a). Everything Bernstein purports to know about MPERS' policies and actions with respect to Vaterria Martin and other local and minority lawyers working on its cases, he learned while he represented MPERS in *Satyam* and both MPERS and Reynolds in *Merck*. The Complaint uses this information to portray MPERS as a knowing participant in a "Kickback Scheme" in violation of RICO. *See* Cmpl. ¶4 ("As an attorney employed by BLB&G, Bernstein

---

[6]    Comment 3 to N.Y. Rule 1.6 provides:

   The principle of client-lawyer confidentiality is given effect in three related bodies of law: the attorney-client privilege of evidence law, the work-product doctrine of civil procedure and the professional duty of confidentiality established in legal ethics codes. The attorney-client privilege and the work-product doctrine apply when compulsory process by a judicial or other governmental body seeks to compel a lawyer to testify or produce information or evidence concerning a client. The professional duty of client-lawyer confidentiality, in contrast, applies to a lawyer in all settings and at all times, prohibiting the lawyer from disclosing confidential information unless permitted or required by these Rules or to comply with other law or court order. The confidentiality duty applies not only to matters communicated in confidence by the client, which are protected by the attorney-client privilege, but also to all information gained during and relating to the representation, whatever its source….

became aware of facts relating to the Kickback Scheme…."). This is a false but damning allegation of misconduct by MPERS. As stated in a letter from the Mississippi AG's office, on behalf of MPERS, to one of Bernstein's previous counsel (Solomon Ex. F at 4):

> For Bruce to make such claims in public court papers for his personal profit over an employment dispute could subject <u>Mississippi and its agency MPERS in a negative light</u>…. <u>It is highly likely that others could (or will) attempt to use this information against Mississippi in future litigation or otherwise</u>, just as Bruce is attempting to use it for his benefit in his threatened lawsuit.

The Kickback Scheme is a fabrication, as BLB&G will prove if this case is litigated. But that does not help MPERS in the meantime. The allegations in and of themselves are detrimental and embarrassing to MPERS, which will be prejudiced in the public eye and exposed to attack, including by defense counsel in *Merck* and other cases, who will likely try to use the allegations as a basis for seeking burdensome and intrusive discovery. *See* Green Dec. ¶¶30-31.

The Complaint also embarrasses and harms Reynolds. *Id*. ¶¶36-37. It alleges that BLB&G, the counsel Reynolds chose to represent him as a lead plaintiff in *Merck*, unlawfully engaged unqualified Mississippi lawyers to work on the case. Cmpl. ¶¶76-87. It alleges that Reynolds was uninformed about matters material to the exercise of his fiduciary duties as a lead plaintiff in *Merck*. *Id.* ¶¶167-68, 170-71; *see also* ¶¶28-30. All of this exposes Reynolds to embarrassment, and defense counsel in *Merck* can be expected to try to use it against him, even though the allegations are meritless and place primary blame on BLB&G and MPERS.

Some information in the Complaint is known to third parties or available from public sources, but this does not deprive it of protection. As explained in Comment 4A to N.Y. Rule 1.6: "Information is not 'generally known' simply because it is in the public domain or available in a public file." *See also* Green Dec. ¶¶16-18; *Johnson v. Medisys Health Network*, No. 10-CV-1596 (ERK)(VVP), 2011 U.S. Dist. LEXIS 156828, at *79-81 (E.D.N.Y. Apr. 28, 2011), *adopted by*, 2011 U.S. Dist. LEXIS 156827 (E.D.N.Y. June 10, 2011) (discussed in Point III,

*infra*); Solomon Ex. B (N.Y. St. Bar Ass'n Comm. on Prof'l Ethics, Op. 991 ¶¶19-20 (2013)

("[I]nformation in the public domain may be protected as confidential information even if the

information is not difficult or expensive to discover.... [I]nformation is generally known only if it

is known to a *sizeable percentage of people in the local community* or in the trade, field or

profession to which the information relates.")); *NCK Org. Ltd. v. Bregman*, 542 F.2d 128, 133

(2d Cir. 1976) (ethical protection for confidential information "is not nullified by the fact that the

circumstances to be disclosed are part of a public record, or that there are other available sources

for such information, or by the fact that the lawyer received the same information from other

sources.").

N.Y. Rule 1.6(a) also protects information from which confidential client information

could be gleaned.  Comment 4 to Rule 1.6(a) explains that:

> Paragraph (a) prohibits a lawyer from knowingly revealing confidential
> information as defined by this Rule. This prohibition <u>also</u> applies to disclosures
> by a lawyer <u>that do not in themselves reveal confidential information but could
> reasonably lead to the discovery of such information by a third person</u>. A lawyer's
> use of a hypothetical to discuss issues relating to the representation with persons
> not connected to the representation is permissible <u>so long as there is no reasonable
> likelihood that the listener will be able to ascertain the identity of the client</u>.

As Professor Green explains, "[t]he ethics rules *forbid indirect or implicit disclosure* as

well as direct or explicit disclosure of client confidences."  Green Dec. ¶19.  "[E]ven allegations

in Mr. Bernstein's complaint that *contain no specific information, but simply use the epithet*

*'Kickback Scheme,'* violate his duty of confidentiality if there is any possibility that someone

could deduce the identity of MPERS or Mr. Reynolds from the rest of the complaint and other

available information."  *Id*.  Moreover, Rule 1.9(c)(1)(a) forbids not only disclosure, but also *use*

of confidential information "to the disadvantage of the former client."  Consequently, "a lawyer

who uses his former client's confidential information in framing a civil complaint against the

client … or against a third person in a manner that disadvantages the former client, but does not

disclose any of the information per se in the complaint, is nonetheless breaching his ethical and fiduciary duty of confidentiality. *Id*. ¶20.

A New York State ethics opinion issued earlier this month, N.Y. State Bar Ass'n Comm. on Prof'l Ethics, Op. 1026, 2014 WL 5369077 (2014), highlights the importance of preventing indirect or implicit disclosure of confidential client information. The inquirer in Opinion 1026, a divorce lawyer who also acts as a mediator, proposed to publish a work of fiction drawing on his practice. The Committee opined that compliance with Rule 1.6(a) would require all confidential client information to be so "altered, disguised, rearranged, and infused with the inquirer's own imagination that *no one can trace particular information to a particular client*." *Id*. ¶15. The Committee cautioned that "this is a high standard that may be difficult to meet":

> The inquirer has a local practice serving individual clients. <u>Details that would be meaningless to a person across the country may provide meaningful clues to a person living in the same county or village.</u> <u>The inquirer will need to pay meticulous attention, fact by fact and detail by detail, to ensure that readers cannot identify his clients.</u> For readers of the book who know (or know of) the inquirer's clients, concealing their identities may be nearly impossible. Perhaps it can be done, but we do not want to make it sound like an easy task.

*Id*. ¶16; *see also Std. Inv. Chartered, Inc. v. Fin. Indus. Regulatory Auth.*, 347 F. App'x 615, 617 (2d Cir. 2009) (if certain financial data unsealed, knowledgeable outsiders would be able to "deduce NASD's negotiation tactics" placing NASD at "significant competitive disadvantage").

BLB&G is recognized by courts, defense lawyers and its peers as the country's preeminent plaintiffs' securities class action firm. Even a heavily redacted Complaint will likely be decipherable by knowledgeable persons in the field. BLB&G's name will prominently appear, and it will be evident that one or more cases are involved. Bernstein worked on relatively few cases at BLB&G, and it is known in the plaintiffs' securities class action bar that he represented Reynolds in *Merck* before he joined BLB&G. Even if parties adverse to MPERS and Reynolds in *Merck* are unable to decipher the Complaint entirely, they will have every

incentive to pursue discovery to see if *Merck* is among them. In discovery, confidential client information that is not privileged will be subject to exposure as a result of Bernstein's breach of ethics. This is why the Action must be sealed in its entirety.

**II.    Protection of Confidential Client Information Is a "Higher Value" Under *Lugosch***

In accordance with the Court's September 22, 2014 Order, BLB&G accepts for purposes of this brief that the Complaint is a judicial document under *Lugosch*. This creates a presumption of public access to the Complaint, which the Court must balance against the considerations supporting sealing. "Notwithstanding the presumption of access under both the common law and the First Amendment,… documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the [stricter] First Amendment framework so demand." *Lugosch*, 435 F.3d at 124; *see also In re Fairfield Sentry Ltd.*, 714 F.3d 127, 140 (2d Cir. 2013) ("Important as public access to court documents may be, it is not an exceptional and fundamental value. It is a qualified right; and many proceedings move forward in U.S. courtrooms with some documents filed under seal, including many cases in this Court."); Federal Judicial Center, *Sealed Cases in Federal Courts* (October 23, 2009) (identifying among 576 sealed civil cases the following 50: "13 actions sealed to protect confidential business information," "4 actions sealed to protect physicians' reputations," "6 actions concerning confidential settlement agreements," "8 actions concerning other confidential agreements," and "19 other actions sealed because the parties wanted them sealed").[7]

In *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545 (S.D.N.Y. Mar. 2, 2012), Judge Swain held that protection of confidential client information is a higher value warranting sealing under *Lugosch*. The Equal Employment

---

[7]    Federal Judicial Center, *Sealed Cases in Federal Courts* (Oct. 23, 2009), *available at* http://www.fjc.gov/public/pdf.nsf/lookup/sealcafc.pdf/$file/sealcafc.pdf (last visited October 28, 2014).

Opportunity Commission brought an age discrimination action against Kelley Drye on behalf of a partner in the firm. The Court so-ordered a stipulation allowing documents to be filed under seal on EEOC's motion for partial summary judgment. After deciding the motion, the Court asked the parties whether certain documents on which the Court relied should remain under seal.

The Court noted that although the term "higher values" under *Lugosch* has not been "comprehensively defined," courts have "identified particular examples," including attorney-client privilege, national security, law enforcement interests, privacy of innocent third parties and sensitive patient information. *Id.* at *2. The Court concluded that "[t]he preservation of attorney-client confidentiality is a well-recognized exception to the presumption of access" and ruled that "any client information in the Judicial Documents should remain confidential." *Id.* at *4.

*Lugosch* explicitly recognizes the attorney-client privilege as a higher value, 435 F.3d at 125. The rationale for protecting confidential client information under N.Y. Rule 1.6(a) is the same as the rationale for protecting attorney-client privileged information:

> The lawyer's duty of confidentiality contributes to the trust that is the hallmark of the client-lawyer relationship. <u>The client is thereby encouraged to seek legal assistance and to communicate fully and frankly with the lawyer</u>, even as to embarrassing or legally damaging subject matter. The lawyer needs this information to represent the client effectively and, if necessary, to advise the client to refrain from wrongful conduct….

Comment 2 to N.Y. Rule 1.6. This is substantively indistinguishable from the observations of District Court, on remand in *Lugosch*, concerning attorney-client privileged information:

> The attorney-client privilege … encourage[s] full engagement between a party and her attorney so that <u>full and frank communication</u> exists to impart all the information an attorney may need in order to give sage and cogent advice on the matter. Stated another way, its essential purpose is to encourage clients to be fully forthcoming with their attorney and to receive, in return, advice which will protect the client's legal rights.

*Lugosch v. Congel*, No. 1:00-CV-0784, 2006 WL 931687, at *12 (N.D.N.Y. Mar. 7, 2006), *R&R rejected in part on other grounds*, 2006 WL 6651777 (N.D.N.Y. May 5, 2006). Since the policy

reasons for protecting confidential client information under Rule 1.6(a) and attorney-client privileged information are the same, there is no reason to accord confidential client information a lesser status under *Lugosch*.

In considering the public's qualified right of access to judicial documents, courts also weigh heavily the privacy interests of third parties such as MPERS and Reynolds. "[T]he Second Circuit has held that the qualified right of access may yield to … the privacy interests of innocent third parties…." *U.S. v. Smith*, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) (quoting *U.S. v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)); *see also Amodeo*, 71 F.3d at 1050 ("[P]rivacy interests of innocent third parties … should weigh heavily in a court's balancing equation.").[8] One benchmark for determining the significance of a privacy right is the "degree to which the subject matter is traditionally considered private rather than public." *Amodeo*, 71 F.3d at 1051; *accord In re Savitt/Adler Litig.*, No. 95-CV-1842, 1997 WL 797511, at *2-4 (N.D.N.Y. Dec. 23, 1997) (sealing names and identifying details of non-parties). There can be no question that confidential information under N.Y. Rule 1.6(a) is traditionally considered private.

## III. New York Law Supports Sealing to Protect Confidential Information

State and federal courts in New York accord confidential client information the strongest possible protection, not only sealing it from public view and enjoining further use and disclosure, but also dismissing suits brought by lawyers against former clients that implicate confidential

---

[8]     As discussed in Defendants' Supplemental Brief (Point V), the Complaint spuriously tars MPERS as a non-innocent third party. But what the Complaint labels a Kickback Scheme is, as noted above, the lawful, legitimate policy of Mississippi and its agencies to involve local and minority lawyers in their litigation. There is nothing sinister or unusual in this, as evidenced by Requests for Proposals ("RFPs") from other states. *See, e.g.*, N.Y. State Ins. Fund, Request for Proposals for Ins. Defense Outside Counsel at Appx. G (Aug. 4, 2014), *available at* http://ww3.nysif.com/AboutNYSIF/~/media/Files/Procurement/PDF/2014-15-LEG_Outside%20Counsel%20-%20Insurance%20Defense_RFP.ashx (Appx. G: Encouraging Use of New York State Businesses in Contract Performance); N.Y. State Urban. Dev. Corp., Solicitation for Pre-Qualification of Legal Counsel at 1, 9 (Apr. 11, 2014), *available at* http://esd.ny.gov/CorporateInformation/Data/RFPs/04182014_RFP_2014_Equity_Invstmnt_Counsel.pdf. *See also* Solomon Exs. I & J ¶6 (*Merck* and *Satyam* Retention Agreements) (with approval of Miss. AG, outside counsel "may associate other attorneys at [outside counsel's] own expense and at no cost to the State of Mississippi").

client information.  New York lawyers are barred from using or disclosing confidential client information in suing former clients.  Bernstein's suit is against BLB&G rather than MPERS or Reynolds, but still, it uses these former clients' confidential information to their disadvantage, in violation of N.Y. Rule 1.9(c).  *See* Green Dec. ¶¶12, 20, 30-31, 37.  To unseal the Action would effectively make good on Bernstein's threat to expose their confidential information, even though the case has been settled and dismissed.

In *Johnson*, 2011 U.S. Dist. LEXIS 156828, at *100, the Court sealed the parts of the record that contained confidential information learned by plaintiff while she represented defendants as their general counsel *and* enjoined her from any future disclosure of such information.  Plaintiff claimed that she was "terminated and otherwise treated improperly because of her opposition to her employer's conduct in connection with a federal criminal investigation."  *Id.* at *4.  Defendants moved to (1) dismiss certain claims concerning plaintiff's termination because they "cannot be maintained without revealing information protected by the attorney-client privilege, the work-product doctrine and ethical rules protecting client confidences;" (2) "seal all or part of the record to protect this information"; and (3) "temporarily restrain and preliminarily enjoin plaintiff from publishing the Complaint … or otherwise disclosing protected information to third parties."  *Id.* at *74-75.  The Court stressed the broad scope of the confidentiality duty (*id.* at *79-81):

> The plaintiff's duty to protect client confidences, imposed by the rules of ethics, is broader than the scope of the attorney-client privilege….The rationale behind this broad protection of client confidences is that in order to ensure effective representation, a client must be encouraged to speak openly with his lawyer…. Unlike the attorney-client privilege, which is an evidentiary privilege that applies where one seeks to compel an attorney to produce evidence, the rule of client-lawyer confidentiality is an affirmative restraint on the attorney [which] applies in situations other than those where evidence is sought from the lawyer through compulsion of law.

The Court also rejected plaintiff's contention that defendants had waived *confidentiality*

protection by disclosing some *privileged* information to third parties, explaining (*id.* at *88):

> [U]nlike the attorney-client privilege, which is destroyed by the disclosure to a third party, <u>the duty to preserve confidential information exists regardless of the knowledge of third parties</u>…. [T]he client's privilege in confidential information disclosed to his attorney is <u>not nullified</u> by the fact that the circumstances to be disclosed are part of a public record, or that there are other available sources for such information, or by the fact that the lawyer received the same information from other sources.

*Johnson* dismissed plaintiff's argument that N.Y. Rule 1.6(b)(5)(i) allowed her to use her former clients' confidential client information to bring suit against them (*id.* at *89-90):

> This argument may have been persuasive <u>if it was not the plaintiff who had commenced the present suit</u>…. Cases applying the exception to defend against an accusation of wrongful conduct are those where the client initiated the lawsuit and where the accusation of wrongful conduct is asserted as a formal claim against the attorney….Moreover, the scope of the information that can be disclosed to defend oneself is <u>narrow and must directly bear on the propriety or legality of [the attorney's] activities</u>.

The Court ruled that plaintiff's claims that relied on defendants' confidential information were not viable as a matter of law and should be dismissed with prejudice. The Court did not need to decide "whether or not the plaintiff is precluded from bringing suit at all" (*id.* at *94 n.18) but, having found that "many of the plaintiff's allegations involve disclosure of [defendants'] confidential information," the Court sealed the relevant portions of the record and enjoined plaintiff "from future disclosure of her former client's confidences." *See id.* at *94.

In reaching this conclusion, the *Johnson* Court took into account the "presumption that judicial records are open to the public" and "balance[d] the demonstrated interests of the movant in the secrecy of the information in question against the importance of the material to the adjudication and the public's interest in access to such materials."[9] *Id.* at *95. Accordingly, the Court did not seal the entire record, noting that plaintiff still had "serious claims … that do not

---

[9] The Court in *Johnson* relied on, *inter alia*, *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995), which is the source of much of *Lugosch*.

rest on confidential information," but did seal everything that rested on confidential client information.[10] *Id.* at *99.

In *Doe v. A Corp.*, 330 F. Supp. 1352, 1354-56 (S.D.N.Y. 1971), *aff'd sub nom.*, *Hall v. A Corp.*, 453 F.2d 1375, 1376 (2d Cir. 1972) (per curiam), the Court foreclosed a lawyer's efforts to use confidential information of his former clients against them, dismissing his suit and enjoining him from disclosing any confidential client information. And to prevent further harm from the lawyer's improper disclosures, the Court directed the clerk of court to seal the case file. (While *Doe* preceded *Lugosch*, its prohibition against a lawyer's use of confidential client information for his personal benefit remains vibrant Second Circuit law; *see* pp. 20-22, *infra*.)

The plaintiff in *Doe* had represented defendant A Corp. while he was employed at an outside law firm ("**X Firm**"). Doe worked closely with A Corp. and had access to its confidential files. Shortly before his employment at X Firm ended, Doe purchased one share of defendant A Corp. common stock. After leaving the firm, he sued A Corp. derivatively and as representative of A Corp. common shareholders. Doe also sued several of A Corp.'s shareholders, officers, and directors, charging them with fraud, breach of fiduciary duty, and federal securities law violations. Doe did not dispute that "every fact alleged in the complaint and upon which this suit is based was acquired by him while associated with the X firm and engaged in legal work for the defendants as clients of the firm." *Doe*, 330 F. Supp. at 1354. Defendants moved to dismiss on the ground that, by bringing suit, plaintiff violated the ethical rule requiring a lawyer to "preserve the confidences and secrets of a client." *Id.*[11]

---

[10]     A review of the *Johnson* docket on PACER shows that following this decision, plaintiff filed an amended complaint to which the public has never been given access. Case No. 10-cv-1596 (E.D.N.Y.), ECF 142 ("You do not have permission to view this document."), 146 (same), 155 (same).

[11]     Under the then-governing New York Code of Professional Responsibility, the analog to Rule 1.6(a) was Disciplinary Rule ("**DR**") 4-101(B), which provided that a lawyer shall not knowingly reveal a "confidence or secret" or use a "confidence or secret" to the disadvantage of the client or for the advantage of the lawyer, absent an

In granting defendants' motion, the Court stated the "elementary" rationale behind this ethical rule: "The client must be secure in his belief that his lawyer will never disclose secrets confided in him." *Id*. The Court explained that:

> Both the fiduciary relationship existing between lawyer and client and the proper functioning of the legal system require the preservation by the lawyer of confidences and secrets of one who has employed or sought to employ him. A client must feel free to discuss whatever he wishes with his lawyer and a lawyer must be equally free to obtain information beyond that volunteered by his client. A lawyer should be fully informed of all the facts of the matter he is handling in order for his client to obtain the full advantage of our legal system. The observance of the ethical obligation of a lawyer to hold inviolate the confidences and secrets of his client not only facilitates the full development of facts essential to proper representation of the client but also encourages laymen to seek early legal assistance.

*Id.* at 1354-55.

The *Doe* Court was careful to point out that the attorney-client privilege and the ethical duty to protect confidential client information "are not co-extensive." *Id*. at 1355. Doe argued that there was no violation of the ethical rule because "none of the information upon which he relies is privileged pursuant to basic rules of evidence." *Id.* The Court held that "[t]his argument misses the point" because the ethical rule:

> looks beyond technical considerations of secrecy in the evidentiary sense and shields all information given by a client to his attorney whether or not strictly confidential in nature. The sole requirement under Canon 4 is that the attorney receive the communication in his professional capacity.

*Id.* at 1356.

The *Doe* Court rejected the notion that Doe's lawsuit could be justified on the ground that it would bring corporate wrongdoing to light, observing that "if an attorney believes that executives of a corporate client are engaging in wrongful conduct, he may disclose this to the corporation's board of directors; but *he infringes Canon 4 if he himself institutes suit*." *Id*. at

---

express exception in DR 4-101(C). N.Y. Rule 1.6(a) encompasses the same scope of information as DR 4-101. *See. e.g., Johnson*, 2011 U.S. Dist. LEXIS 156828, at *79-81 (N.Y. Rule 1.6(a) and DR 4-101 are co-extensive).

1355. Doe could also have "endeavored to persuade his clients to rectify their wrongs," and if

they refused to do so, "he should have severed his relations with them." *Id*. at 1356. But

bringing suit "to attempt to enforce A Corp.'s rights independently in court is a clear violation of

the attorney's duty not to disclose confidential information," however honorable his motives. *Id*.

Doe could not possibly pursue his suit against his former clients without violating his ethical

duties:

> There can be little doubt that Doe's prosecution of the present suit runs counter to
> the dictates of Canon 4 [requiring preservation of secrets and confidences]. The
> test under the canon is <u>whether in this litigation Doe would be required to do</u>
> <u>anything which might injuriously affect his former clients in any matter in which</u>
> <u>he formerly represented them, or whether he would be called upon to use against</u>
> <u>these former clients any knowledge or information acquired through his former</u>
> <u>connection with them</u>.

*Id*. at 1355. As in the instant case, both prongs of this prohibition were triggered.

The *Doe* Court dismissed the complaint without prejudice, enjoined Doe and his co-

counsel from disclosing any "secret or confidential information" learned by Doe while at X firm,

enjoined Doe and his co-counsel from contacting shareholders of A Corp., and directed the clerk

of court to seal the file in the case. *Id.* at 1356. The Second Circuit affirmed the District Court's

order and directed the clerk of the court to "destroy all copies of the briefs except one, which he

shall seal," and "seal all copies of the appendix pending possible transmission to the Clerk of the

Supreme Court if appellant should petition for *certiorari*," and absent such a petition, to "destroy

all copies except one, which he shall seal." *Hall*, 453 F.2d at 1376.

Similarly, in *Wise v. Consol. Edison Co.*, 282 A.D. 2d 335, 335-36 (1st Dep't 2001), *lv.*

*to app. den.*, 96 N.Y. 2d 717 (2001), the First Department dismissed and sealed a former in-

house counsel's wrongful discharge action against his former employer-client because

"permitting the action to go forward would entail the improper disclosure by plaintiff… of client

confidences, including specific corporate tax strategies." *Id*. at 335. The Court stressed that

"[t]he ethical obligation to maintain the 'confidences' and 'secrets' of clients and former clients is broader than the attorney-client privilege, and exists without regard to the nature or source of information or the fact that others share the knowledge." *Id.* The Court rejected plaintiff's attempt to invoke the self-defense exception, pointing out that plaintiff's "affirmative claims against defendant for damages … do not fall within the exception permitting an attorney to disclose confidences or secrets necessary to defend against an accusation of wrongful conduct." *Id.* at 336. The Court also ruled that "[s]ince this action involves client confidences, defendant's motion permanently to seal the record should have been granted." *Id.*

Recently, in *U.S. v. Quest Diagnostics Inc.*, 734 F.3d 154 (2d Cir. 2013), the Second Circuit similarly dismissed a lawsuit by a former general counsel against his former employer-client in which the lawyer used and revealed confidential client information in violation of the ethical rules. While sealing is not discussed, *Quest* strongly supports BLB&G's position that protecting confidential client information is a higher value worthy of protection under *Lugosch*.

In *Quest*, the former general counsel and three former executives of Unilab formed an entity (**FLPA**) to bring a *qui tam* action against Unilab and its parent (**Quest**), alleging violations of the Anti-Kickback Statute ("**AKS**"). FLPA alleged that Unilab and Quest violated the AKS through a scheme for overcharging the federal government under Medicare and Medicaid. Defendants moved to dismiss arguing, *inter alia*, that the former general counsel violated N.Y. Rule 1.9(c) by using Unilab's confidential information in the litigation.[12] The former general counsel responded that this was permitted by the exception in N.Y. Rule 1.6(b)(2), which allows a lawyer to reveal or use confidential information to the extent that the lawyer reasonably

---

[12] N.Y. Rule 1.9(c) provides: "A lawyer who has formerly represented a client in a matter … shall not thereafter:  (1) use confidential information of the former client protected by Rule 1.6 to the disadvantage of the former client, except as these Rules would permit or require with respect to a current client or when the information has become generally known; or (2) reveal confidential information of the former client protected by Rule 1.6 except as these Rules would permit or require with respect to a current client."

believes necessary to "prevent the client from committing a crime." *Id.* at 162.

The District Court granted defendants' motion to dismiss on the ground, *inter alia*, that the former general counsel's participation in the action violated the prohibition against disclosing client confidences beyond what was necessary to prevent the commission of a crime. *Id.* Noting that courts in the Southern District of New York "have not hesitated" to dismiss claims brought by lawyers in violation of their ethical obligations, the District Court had held that the appropriate remedy was to dismiss the complaint as to all defendants and disqualify FLPA, each of its individual members and FLPA's counsel "from bringing this suit or any subsequent suit based on the same facts," reasoning that these measures were "necessary to protect Defendants from the use of their confidential information against them." *Id.* at 162-63 & n.15.

The Second Circuit agreed that the former general counsel had revealed more of Unilab's confidential information than was reasonably necessary to prevent any ongoing fraudulent scheme. The Court explained that FLPA could have brought the *qui tam* action based on information provided by its members who were former Unilab executives, "or, *if necessary*, [the former general counsel] could have made limited disclosures. Instead, [he] chose to participate in the action and disclose protected client confidences … in violation of Rule 1.9(c)." *Id.* at 165 (emphasis in original). The Court acknowledged that "dismissal or disqualification for violations of ethical rules may impede the pursuit of meritorious litigation to the detriment of the justice system," and noted "the particularly strong federal interest underpinning *qui tam* litigation." *Id.* at 166. Nevertheless, the Court found no error or abuse of discretion in the District Court's holding that, in view of the former general counsel's "unrestricted sharing of confidential information," permitting FLPA or any of its members to proceed with the suit would "taint the trial proceedings and prejudice defendants." *Id.* at 167.

*Eckhaus v. Alfa-Laval, Inc.*, 764 F. Supp. 34, 38 (S.D.N.Y 1991), like *Quest*, is highly instructive, although it, too, does not address sealing. *Eckhaus* granted summary judgment dismissing a former in-house lawyer's defamation suit against his former employer because "[p]ermitting disclosure of client confidences and secrets under these circumstances would impinge upon the sanctity of the attorney-client relationship in a manner not contemplated by the Disciplinary Rules." *Id.* Plaintiff claimed that defendant defamed him in a performance evaluation. Defendant moved for summary judgment "grounded solely on the proposition further prosecution … will require plaintiff to reveal client confidences and secrets in violation of [the predecessor of Rule 1.6]." *Id.* at 36-37. Defendant pointed to the complaint's allegations revealing portions of an internal memorandum critiquing plaintiff's "convoluted strategy in notifying insurance carriers of the existence of a hazardous waste site" and to plaintiff's affidavit, which contained "allegations that corporate officers intended to destroy documents they were required to produce in litigation." *Id.* at 37.

The *Eckhaus* Court rejected plaintiff's contention that his disclosures were justified by the self-defense exception in the predecessor to N.Y. Rule 1.6(b)(5) because "[i]nformal charges made during a performance review of an in-house attorney specifically contemplated by his employment contract do not amount to an accusation of wrongful conduct." *Id.* at 37-38. The Court deemed it irrelevant that the complaint stated a viable cause of action because protection of confidential client information prevails over the lawyer's personal interests. *Id.* at 37.

The principle that a New York lawyer may not use or disclose confidential information for his personal benefit was recently reaffirmed by the Ethics Committee of the N.Y. County Lawyers Association, which opined that "Rule 1.6 does not permit disclosure of confidential information in order to collect a Dodd-Frank whistleblower bounty, even in compliance with the

SEC rules, if that disclosure does not fit within an exception under New York RPC 1.6 or is not necessary to correct a fraud, crime or false evidence within the meaning of RPC 3.3." Solomon Ex. C (N.Y. Cnty. Lawyers' Ass'n Comm. on Prof'l Ethics, Op. 746 at 10 (2013)).

Opinion 746 explains that a lawyer's disclosure of confidential information to collect a bounty for himself or herself will rarely, if ever, be permissible (*id.* at 9):

> Even when disclosure is permitted under the New York Rules, for example, when clear corporate wrongdoing rising to the level of crime or fraud has been perpetrated through the use of the lawyer's services, <u>preventing wrongdoing is not the same as collecting a bounty</u>. Even in cases of clear criminal conduct or fraud, the lawyer's disclosure must be limited to reasonably necessary information.

> As a general principle, <u>there are few circumstances, if any, in which, in the Committee's view, it would be reasonably necessary within the meaning of RPC 1.6(b) for a lawyer to pursue the steps necessary to collect a bounty as a reward for revealing confidential material</u>….

> Thus, in those circumstances in which the New York Rules apply, this Committee opines that <u>disclosure of confidential information in order to collect a whistleblower bounty is unlikely, in most instances, to be ethically justifiable</u>. This is because, under most circumstances, such disclosure is not reasonably necessary, and does not fit within the enumerated exceptions of RPC 1.6(b).

Opinion 746 also cautions that, *even where there is an applicable confidentiality exception* (which is not the case here), seeking to collect a bounty at the expense of a former client may violate ethical rules and fiduciary duties (*id.* at 13-14):

> While in some circumstances a lawyer may be required to take remedial action to prevent or correct client fraud or perjury, <u>such actions should be taken because they are required by the law or the RPC — not because the lawyer seeks personal gain at the former client's expense</u>. Additionally, we believe that attorneys owe a fiduciary duty to former clients to maintain confidentiality, and <u>may not violate that fiduciary duty in order to promote a personal interest</u>…. [W]e believe that undertaking this otherwise permissible disclosure in a manner that results in a bounty for the attorney raises a significant risk that the attorney's judgment in determining whether disclosure is "reasonably necessary" will be adversely affected and <u>presents a conflict of interest that is beyond what Rule 1.9 was intended to allow</u>.

## IV.    The Marked Complaint Is Not a Proposed Redacted Complaint

At the September 22, 2014 hearing, the Court directed Defendants to submit a copy of the Complaint that marks the information the parties believe is confidential under the definition in Rule 1.6(a), separately designating what falls within subsection (a) ("protected by the attorney-client privilege"), subsection (b) ("likely to be embarrassing or detrimental to the client if disclosed") and subsection (c) ("information that the client has requested be kept confidential'). Tr. 22-23.  A marked complaint (the "Marked Complaint") is annexed as Exhibit A to the Solomon Declaration.  The material designated as confidential in the Marked Complaint falls into one or more of the following three categories:

1. The names of MPERS and Reynolds and allegations from which their identities could be deduced, including allegations that either reference *Satyam* and *Merck* or from which those case names could be deduced.

2. Allegations concerning the alleged Kickback Scheme, including allegations mentioning "Kickback Scheme" or RICO; alleged *quid pro quo* arrangements with clients, including use and compensation of Mississippi counsel and any allegedly false or misleading statement to a court with respect to such counsel; alleged internal reporting within BLB&G of supposed unethical conduct and deterrence of outside reporting; and alleged retaliation for reporting to the U.S. Attorney's Office.

3. Allegations implicating confidential information of Reynolds, including allegations about (1) communications between Reynolds and Bernstein or any other lawyer at BLB&G, (2) any challenge to Reynolds's status as a lead plaintiff in *Merck*, and (3) Reynolds's performance of his fiduciary duties as lead plaintiff in *Merck*.

This material is confidential under Rules 1.6(a) and 1.9(c) for the reasons set forth in Point I above and in the Green Declaration (¶¶12-22, 27-39).

Redacting the Complaint as per the Marked Complaint and then unsealing the redacted document would not, however, be acceptable to BLB&G, under the parties' settlement agreement, in lieu of the whole Complaint staying under seal, for the reasons discussed above. Such a redacted Complaint will inevitably lead to discovery requests in pending actions that will seek precisely the same information that Bernstein should not have revealed in the first place. As the cases in Point III demonstrate, the Action should never have been started and is subject to dismissal because it improperly uses and discloses confidential information. That information should not now be exposed to others merely because Bernstein filed the Complaint in breach of his ethical and fiduciary duties of confidentiality.

As suggested at the September 22, 2014 hearing (Tr. 14-15, 19), however, it may be possible to address the concerns of the Firm and its clients, MPERS and Reynolds, by substituting for the current Complaint an amended pleading that would assert Bernstein's claim for a bonus from BLB&G without using or disclosing any confidential client information. That is the only claim that BLB&G has ever been willing to settle. Such an amended complaint would substantively have the same effect as a redacted complaint but without the negative implications of a redacted complaint, which would, *inter alia*, elicit suspicion, discovery, and potential adverse consequences for MPERS and Reynolds. *See, e.g.*, *Gray v. Maryland*, 523 U.S. 185, 192-93 (1998) (redaction of trial exhibit may elicit undue speculation by jury).

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court administratively close this case, thereby allowing the Action to remain permanently under seal.

Dated: New York, New York
      October 29, 2014

Respectfully submitted,

**JOSEPH HAGE AARONSON LLC**

Gregory P. Joseph (GJ-1210)
Pamela Jarvis (PJ-1250)
Courtney A. Solomon (CS-1289)
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel: (212) 407-1200
Fax: (212) 407-1280
Email: gjoseph@jha.com

*Attorneys for Defendants*

754670