UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOHN DOE,

                Plaintiff,

   -against-

ABC COMPANY LLP, et al.,

                Defendants.

Case No. 14 Civ. 6867 (VEC)

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION TO MAINTAIN SEALING ORDER

## *SUBMITTED UNDER SEAL*

Justin M. Sher
SHER TREMONTE LLP
80 Broad Street, Suite 1301
New York, New York 10004

*Attorneys for Plaintiff John Doe*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND......................................................................................................2

ARGUMENT................................................................................................................................5

    I.    THE PRESUMPTION OF PUBLIC ACCESS IS ENTITLED TO MINIMAL WEIGHT BECAUSE THE COURT HAS NOT ADDRESSED THE MERITS OF THE CASE .................5

    II.   SIGNIFICANT COUNTERVAILING FACTORS OF PRIVACY, EFFICIENCY AND THE PROMOTION OF SETTLEMENT WEIGH STRONGLY IN FAVOR OF MAINTAINING THE SEALING ORDER .......................................................................................7

CONCLUSION ..........................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Bergen Brunswick Corp. v. Ivax Corp.*, No. 97 Civ. 2003, 1997 WL 113976 (S.D.N.Y. Mar. 12, 1998) ................................................................................................................. 8, 9, 10, 13

*Brigham Young Univ. v. Pfizer, Inc.*, 281 F.R.D. 507 (D. Utah 2012) ........................................ 13

*Di Pietro v. United States*, No. 02 CR. 1237-01 (SWK), 2009 WL 801609 (S.D.N.Y. Mar. 24, 2009) ........................................................................................................................................ 9

*Dombrowski v. Bell Atlantic Corp.*, 128 F. Supp. 2d 216 (E.D. Pa. 2000) .................................. 10

*Gambale v. Deutsche Bank AG*, 377 F.3d 133 (2d Cir. 2004) ............................................... 10, 11

*IDT Corp. v. eBay*, 709 F.3d 1220 (8th Cir. 2013) .......................................................... 8, 9, 10, 14

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, No. 07 CIV. 10470, 2013 WL 3531600 (S.D.N.Y. July 12, 2013) .......................................................................................... 14

*In re N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401 (2d Cir. 2009) .................................................................................................................................. 13, 14

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006) .................................. passim

*Travelers Indemnity Co. v. Excalibur Reinsurance Corp.*, No. 3:11 Civ. 1209, 2013 WL 4012772 (D. Conn. Aug. 5, 2013) ............................................................................................ 10

*United States v. All Funds on Deposit at Wells Fargo Bank in San Francisco, California, in Account No. 7986104185, Held in the Name of Account Servs. Inc., & All Prop. Traceable Thereto*, 643 F. Supp. 2d 577 (S.D.N.Y. 2009) ........................................................................ 14

*United States v. Erie Cnty., N.Y*, 763 F.3d 235 (2d Cir. 2014) ............................................ 12, 13

*United States v. Gotti*, 322 F. Supp. 2d 230 (E.D.N.Y. 2004) .................................................... 14

*United States v. Graham*, 257 F.3d 143 (2d Cir. 2001) .............................................................. 14

*United States v. Tangorra*, 542 F. Supp. 2d 233 (E.D.N.Y. 2008) ............................................ 13

*Walker v. Gore*, No. 1:08 Civ. 0549, 2008 WL 4649091 (S.D. Ind. Oct. 20, 2008) ............. 10, 13

**Rules**

N.Y. Rules of Prof'l Conduct Rule 1.6 (2014) .......................................................................... 4, 5

# PRELIMINARY STATEMENT

Pursuant to the Court's Order, dated September 22, 2014, Plaintiff respectfully submits this memorandum of law in support of his request that the Court order this case closed without unsealing the record. Such an order is warranted for two primary reasons. First, because this case was active for only thirteen days before Plaintiff filed a Notice of Dismissal and the parties did not litigate any aspect of this case other than sealing issues, the Court did not exercise any of its Article III powers to adjudicate the merits of this dispute. In such circumstances, any presumption that the public should have access to the filings in this action is minimal.

Second, countervailing factors of privacy, efficiency and the promotion of settlement weigh heavily in favor of maintaining the sealing order. Doing so will preserve the parties' settlement agreement, which is contingent upon this action remaining under seal. During much of the two years since Plaintiff departed from ABC Company LLC (the "Firm") in October 2012, Plaintiff expended substantial time, effort and financial resources in attempting to resolve this dispute. On September 4, 2014, thirteen days after the commencement of this action, the parties finally reached an agreement to resolve Plaintiffs' claims (the "Confidential Settlement Agreement"). In reliance on the Confidential Settlement Agreement, Plaintiff filed a Notice of Dismissal based on the belief that this action – and this challenging period of his life, which included the repeated efforts he took to address Defendants' misconduct while still employed by the Firm – would be closed. An order maintaining the sealing order would allow Plaintiff and his family to move forward in life and hopefully lead to the resumption of Plaintiff's legal career.

In contrast, an order unsealing the record would vitiate the Confidential Settlement Agreement, force the parties into potentially prolonged and costly litigation, and likely expose Plaintiff to assertions that the information underlying his claims is confidential. Although

1

Plaintiff strongly disagrees with those assertions, the accusations themselves would be detrimental to his career and could permanently taint his reputation.

## FACTUAL BACKGROUND

Plaintiff's employment with the Firm ended in October 2012. (Complaint ¶¶ 95-96.) Beginning in February 2013, the parties spent approximately 18 months actively negotiating a potential settlement. They participated in two separate mediations, the first of which took place before JAMS. Plaintiff, as well as the Firm and several of its senior partners, engaged counsel, submitted 30-page mediation statements, and met with the mediator for approximately eight hours on April 19, 2013. The parties had numerous, follow-up communications through the mediator. Notwithstanding the substantial effort, time and financial resources Plaintiff invested, which included expenses associated with his retention of an expert in the field of ethics and professional responsibility, the mediation was unsuccessful.

The parties subsequently participated in a second mediation in December and January 2013. This mediation, which was managed by two mediators from the Pilgrim Mediation Group ("Pilgrim"), also failed to result in a resolution. In March 2013, upon Plaintiff's suggestion, Plaintiff and the Firm's senior partner met directly. Pilgrim's mediators supervised the meeting, which was not attended by counsel for either of the parties. This effort and the additional informal efforts by the parties' counsel to broker a settlement agreement were unsuccessful.

During the course of the parties' discussions, Defendants took the position that the information underlying Plaintiff's claims was confidential information relating to a Firm client (the "Client") and that any efforts by Plaintiff to litigate these claims would violate Rule 1.6 of the New York Rules of Professional Conduct ("RPC"). Plaintiff's counsel received two separate letters from a person purporting to write on behalf of the Client, which directed Plaintiff to

refrain from disclosing information relating to the Client. Copies of the letters were also sent directly to Plaintiff's home address. The second letter specifically warned Plaintiff that, if he failed to comply with this instruction, "we will have no . . . choice but to hold you . . . accountable." (Complaint ¶¶ 112-113.)

In the absence of any progress toward settlement despite 18 months of significant efforts and corresponding costs, Plaintiff moved forward with his claims. However, because he was concerned about the consequences of being exposed to accusations that he was violating RPC Rule 1.6, Plaintiff sought to secure a sealing order before initiating the action. On July 24, 2014, Plaintiff submitted a letter to the Part 1 Judge, the Hon. P. Kevin Castel, requesting "a sealing order prior to commencing an action." (7/24/14 Ltr. at 1.) Plaintiff asked that "all materials filed in this case" be sealed "until the Court resolves these issues of [client] confidentiality." (*Id.* at 2.)

On July 24, 2014, Judge Castel endorsed the July 24 letter and ordered that "the action may be filed under seal and the sealing shall expire within 14 days of service of process on defendants unless extended by order of the judge to whom the case is assigned" (emphasis omitted) (the "July 24 Sealing Order"). (7/24/14 Order.)

By obtaining a sealing order prior to initiating this action, Plaintiff intended to ask the Court to issue a ruling as to the parties' confidentiality dispute before the case became public. If the Court determined, as Plaintiff's legal ethics expert advised, that the ethical rules permitted Plaintiff to pursue his claims, he intended to do so regardless of whether the case remained sealed. As Plaintiff suggested in his letter of July 24, if the information was deemed to be confidential, Plaintiff understood that he would be able to discontinue this action and that it

3

would remain perpetually under seal, thereby avoiding any purported harm to the Firm or its Client.

On August 15, 2014, before commencing the action and in an effort to confirm his understanding, Plaintiff spoke to a clerk in the Court's Records Management Division and asked whether, if the action were concluded before the expiration of the July 24 Sealing Order, the Action would remain permanently under seal. Plaintiff was told that, in that event, the action would remain permanently under seal. (*See* Pl. Decl. of 9/19/14, ¶¶ 7-9)

On August 22, 2014, Plaintiff filed the Complaint under seal and served it on Defendants. Plaintiff filed two civil cover sheets: one, filed under seal, bears a caption that identifies the parties by name; the other bears the anonymous "Doe v. ABC" caption.

Thirteen days later, on September 4, 2014, the parties signed the Confidential Settlement Agreement and settled their dispute. The Confidential Settlement Agreement resolves Plaintiff's claims, avoids any dispute over the confidentiality of the facts underlying those claims, and terminates this litigation. The Confidential Settlement Agreement provides, however, that, unless all information concerning the action remains strictly and permanently confidential, the settlement will unwind.

On the morning of September 5, 2014, the parties together confirmed with the Court's Records Management Division that, if Plaintiff voluntarily dismissed the action while the July 24 Sealing Order was still in effect, the action would remain permanently sealed. Plaintiff thereupon filed the Notice of Dismissal.

On the same day, the parties jointly submitted a letter to the Court enclosing a copy of the Notice of Dismissal and asking the Court to direct the clerk to close the action. In response, the Court entered an order providing for the case to "remain under seal until further order of the

Court" and asking the parties to "submit a brief in support of their contention that the Court should permit this action to remain under seal." Because this order was not transmitted to the parties, the Court, on September 12, 2014, entered another order to the same effect.

Following a conference on September 22, the Court ordered the parties to submit supplemental briefing articulating the basis for their assertion that the action should remain under seal. The Court directed the parties to assume for this purpose that the Complaint is a judicial document. The Court further ordered the Defendants to submit a "marked-up" version of the Complaint that identifies the information Defendants claim to be confidential and to explain the basis for this contention. (9/22/14 Order.)

## ARGUMENT

### I. THE PRESUMPTION OF PUBLIC ACCESS IS ENTITLED TO MINIMAL WEIGHT BECAUSE THE COURT HAS NOT ADDRESSED THE MERITS OF THE CASE

The Court should attach minimal weight to the presumption of public access in this case because the Court has not exercised its judicial power with respect to the merits of the dispute. A common law presumption of public access attaches to filings that are "judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). A judicial document is a filed item that is "relevant to the performance of the judicial function and useful in the judicial process." *Id.* In this case, the Court has directed the parties to assume that the Complaint is a judicial document. (*See* 9/22/14 Order.)

Once a court has identified a filing as a judicial document, it must determine the weight of the common law presumption of public access that attaches. *Id.* The weight of the presumption is "governed by the role of the material at issue in the exercise of the Article III judicial power and the resultant value of such information to those monitoring the federal

5

courts." *Id.* (internal quotations omitted). The document will generally fall within "a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Id.* (internal quotations omitted).

In *Bergen Brunswick Corp. v. Ivax Corp.*, No. 97 Civ. 2003, 1997 WL 113976 (S.D.N.Y. Mar. 12, 1998), Judge Leisure held that a complaint filed under seal should remain under seal notwithstanding a motion to unseal filed by nonparties who sought access to the complaint. Critical to the court's holding was the fact that the parties had settled the case shortly after it was filed and no adjudication on the merits had taken place: "The Complaint is not essential to an adjudication in the instant case, as the parties have settled the dispute and the suit has been dismissed with prejudice. . . . Thus, the material is not vital to any adjudication in this Court, as dismissal with prejudice assures that there can be no actual adjudication of the Complaint in question." *Id.* at *3. Moreover, the court reasoned that its role was "even more minimal" because the "dispute affects only private parties." *Id.* at *5. Although the court acknowledged the "public right of access to court documents that become the basis for Article III judicial functions," the court denied the nonparties' motion to unseal the complaint in light of the settlement because "the Complaint will never be the basis for an adjudication by this Court." *Id.*

Similarly, in *IDT Corp. v. eBay*, the Eighth Circuit held that a district court "properly treated as minimal the public's interest in access" to a complaint where the parties settled their dispute three weeks after the plaintiffs filed their complaint under seal. 709 F.3d 1220, 1222, 1224 (8th Cir. 2013). The court observed that the complaint had played only a "negligible role" in the performance of the district court's Article III duties because the district court "never adjudicated any aspect of the claims on the merits." *Id.* at 1224. The district court's only action was to enter a stipulated dismissal based on a settlement, and it considered the relevant

6

documents "only to determine whether to seal them." *Id.* On this basis, the Eighth Circuit concluded that any right of access under the First Amendment did not apply: "ALPC has not established a strong historical tradition of public access to complaints in civil cases that are settled without adjudication on the merits. And public access to the complaint would add little if any value to the judicial process where, as here, the only action was to seal the complaint and sign a stipulated dismissal." *Id.* at 1224 n.\* (internal citations omitted). Although the Eighth Circuit remanded the case for the district court to determine whether the complaint could be redacted instead of sealed in its entirety, the Eighth Circuit held that the district court did not abuse its discretion in denying access to a public interest law center. *Id.*

In this case, the parties settled this action thirteen days after it was filed. The Court has not exercised its Article III functions to adjudicate the merits of this case. The sole issue that the parties have litigated relates to whether the case should remain under seal – an issue the parties addressed at the Court's request after they executed the Confidentiality Settlement Agreement and Plaintiff voluntarily dismissed the Complaint. Under these circumstances, as in *Bergen Brunswick* and *IDT Corp.*, any presumption of public access is minimal.

## II. SIGNIFICANT COUNTERVAILING FACTORS OF PRIVACY, EFFICIENCY AND THE PROMOTION OF SETTLEMENT WEIGH STRONGLY IN FAVOR OF MAINTAINING THE SEALING ORDER

The significant countervailing factors that favor confidentiality in this case are sufficient to overcome the weak presumption of public access. Once a court determines the weight of the presumption of public access (which, as discussed above, is minimal in this case), "the court must balance competing considerations against it." *Lugosch*, 435 F.3d at 120 (internal quotations omitted). These competing considerations include "judicial efficiency," the "privacy interests of those resisting disclosure," *id.* (internal quotations omitted), and the privacy interests

of nonparties. *See Di Pietro v. United States*, No. 02 CR. 1237-01 (SWK), 2009 WL 801609, at *3 (S.D.N.Y. Mar. 24, 2009) (sealing document that threatened to embarrass nonparty); *see also Travelers Indemnity Co. v. Excalibur Reinsurance Corp.*, No. 3:11 Civ. 1209, 2013 WL 4012772 (D. Conn. Aug. 5, 2013) (granting motion to seal to protect privacy and reputational interests of a nonparty broker).

Based on these considerations, courts regularly maintain sealing orders, even when they are challenged by parties or nonparties, where both parties have agreed to keep the information confidential. *See, e.g., Gambale v. Deutsche Bank AG*, 377 F.3d 133, 143 (2d Cir. 2004) (holding that parties' agreement to keep settlement confidential overcame "weak" presumption of public access); *see also IDT Corp.*, 709 F.3d at 1221, 1224 (denying motion by public interest law firm to access sensitive business information contained in a sealed complaint following parties' settlement); *Walker v. Gore*, No. 1:08 Civ. 0549, 2008 WL 4649091, at *1-2 (S.D. Ind. Oct. 20, 2008) (maintaining complaint under seal where parties agreed to preserve confidentiality and arbitrate disputes and court had invested "no time at all in the merits of the plaintiffs' claims"); *Dombrowski v. Bell Atlantic Corp.*, 128 F. Supp. 2d 216 (E.D. Pa. 2000) (granting in part joint motion to seal portions of complaint filed by former attorney that contained privilege information); *Bergen Brunswick Corp.*, 1997 WL 113976, at *1, 3 (denying nonparties' motion to unseal complaint that contained sensitive business information which both parties had agreed to keep confidential).

Multiple factors favor maintaining the sealing order in this case. First, a sealing order is necessary to preserve the parties' settlement. The Confidential Settlement Agreement followed 18 months of negotiations during which Plaintiff expended substantial time, resources and effort. Plaintiff participated in two separate rounds of unsuccessful mediation with two different

mediators. Both parties engaged experts on legal ethics who took opposing positions on the confidentiality of the facts underlying Plaintiff's claims. Their lawyers attended multiple meetings and participated in dozens of telephone conferences.

The Confidential Settlement Agreement achieves a delicate and hard-fought resolution that settles Plaintiff's claims and ends litigation. Based on the parties' communications with the Records Management Clerk, the parties believed they could maintain this action under seal and inserted a provision that renders the agreement contingent on this dispute remaining confidential. An order unsealing the case would thus cause the settlement to unwind and force the parties into costly, protracted and unwanted litigation. This alone is a compelling reason to maintain the sealing order in this case. *See Gambale*, 377 F.3d at 143 ("If nothing else, honoring the parties' express wish for confidentiality may facilitate settlement, which courts are bound to encourage.").

Second, as discussed above, Defendants contend that the Complaint contains confidential information acquired by Plaintiff in the course of his representation of a Firm Client. If the Court were to unseal the Complaint, Plaintiff would face an increased risk of Defendants' accusing him of ethical misconduct and initiating disciplinary proceedings. Although Plaintiff strongly disagrees with Defendants' position and believes that any such proceedings would be resolved in his favor, Plaintiff wishes to keep this case sealed in its entirety to avoid this risk.[1]

Third and finally, an unsealing order could further impede Plaintiff's search for employment. In his ongoing job search, Plaintiff must overcome a weak legal market and an employment history that includes two law firms, Milberg Weiss and Dreier, that were targets of

---

[1] In the event the Court unseals any portion of this action such that the Confidential Settlement Agreement is vitiated and this litigation proceeds, Plaintiff respectfully requests an opportunity to submit briefing, including the expert declaration of Ronald C. Minkoff, Esq., to demonstrate that Plaintiff upheld all his ethical and legal obligations both before and after filing the Complaint.

criminal investigations. In the two years since Plaintiff left the Firm, these challenges have prevented him from obtaining employment. Although he has made recent progress in connection with one potential employer, Plaintiff has not yet secured a job. The unsealing of any aspect of this case would expose Plaintiff to being identified as a disgruntled employee associated with suing his former employer.[2] Such a characterization likely would make it even more difficult for Plaintiff to secure legal employment and could jeopardize his pending job application. Given that this case has now settled, Plaintiff and his family should not be forced to face this additional, significant challenge. *See* Federal Judicial Center, Sealed Cases in Federal Courts, October 23, 2009, at 13 (citing anonymous employment case that was sealed permanently because plaintiff claimed public disclosure would harm professional prospects).

---

[2] Unlike *Qui Tam* cases, in which sealing orders automatically expire after 60 days pursuant to statute and the relator brings an action in the name of the United States Government. 31 U.S.C § 3730(b)(1),(2), this case involves a dispute between private parties, and no statute requires the unsealing of the Complaint.

## CONCLUSION

In light of the weak presumption of access that applies in this case and the substantial personal privacy interests at stake, Plaintiff respectfully requests that the Court close this case without unsealing the record so that the parties may preserve their settlement agreement, Plaintiff can move on with his career, and Plaintiff and his family can move on with their lives.

Dated: New York, New York
October 29, 2014

SHER TREMONTE LLP

By: _____
Justin M. Sher
80 Broad Street, Suite 1301
New York, New York 10004
Tel: 212.202.2600
Email: jsher@shertremonte.com

*Attorneys for Plaintiff John Doe*